IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:19-CV-61140-BB

BLAKE TURIZO, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

JIFFY LUBE INTERNATIONAL, INC., and
ATLANTIC COAST ENTERPRISES, LLC
d/b/a ACE LUBE CENTERS, LLC,

        Defendants.

**DEFENDANT, ATLANTIC COAST ENTERPRISES, LLC
d/b/a ACE LUBE CENTERS, LLC, MOTION TO DISMISS AMENDED COMPLAINT
AND SUPPORTING MEMORANDUM OF LAW**

Defendant, ATLANTIC COAST ENTERPRISES, LLC d/b/a ACE LUBE CENTERS, LLC (hereinafter referred to as "ACE"), by and through its undersigned counsel, hereby moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint filed herein by Plaintiff, BLAKE TURIZO, individually and on behalf of all others similarly situated (hereinafter referred to as the "Plaintiff"), and as grounds therefore states as follows:

**BACKGROUND**

On May 5, 2019, Plaintiff commenced the instant action by filing a two (2) count Complaint. [D.E. 1]. In the Complaint, Plaintiff alleged that Defendant, JIFFY LUBE INTERNATIONAL, INC. (hereinafter referred to as "Jiffy Lube"), violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by sending text messages to Plaintiff

without his prior express consent. Jiffy Lube responded by moving to dismiss the Complaint for lack of personal jurisdiction. [D.E. 13]. Before the Court ruled on the motion to dismiss, Plaintiff filed the Amended Complaint [D.E. 16]. While the Amended Complaint is largely identical to its predecessor (albeit with one less count), Plaintiff has added ACE as a party-defendant and now alleges that ACE transmitted the text messages "at the direction, command, and control of" Jiffy Lube. *See* ¶ 34, Amended Complaint.

The most striking aspect of the Amended Complaint is the dearth of facts pled in support of Plaintiff's conclusory assertions. While Plaintiff spends page after page parroting statutory language, he only makes one relevant factual allegation – that he received "at a minimum, two" text messages from ACE. *See* ¶ 12, Amended Complaint. Plaintiff then depicts the "actual text messages" that he allegedly received from ACE. *See* ¶ 14, Amended Complaint. However, Plaintiff only identifies a single, undated text message wherein Plaintiff is identified by name, thanked for being a customer, and asked to provide feedback regarding recent service to his vehicle. *See* ¶ 14, Amended Complaint. The balance of the Amended Complaint is simply naked, self-serving legal conclusions, such as "Plaintiff received the text messages in this judicial district," "Defendants unsolicited text messages caused Plaintiff actual harm, including invasion of Plaintiff's privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion", ACE uses "an automatic telephone dialing system", Jiffy Lube "had actual or apparent controls of ACE's marketing efforts," and "[t]he complained of text messages violate the TCPA and were otherwise negligently sent, or, alternatively, willfully sent by Defendants despite prior knowledge of the TCPA." *See* ¶¶ 10-13, 15-17, 19-20, 33-38, Amended Complaint.

For the reasons more particularly described *infra*, the Amended Complaint falls woefully short of stating a viable TCPA claim against ACE. The Amended Complaint does not plausibly allege that ACE used an automatic telephone dialing system to send text messages to Plaintiff or that ACE sent text messages to Plaintiff without his prior express consent. Accordingly, the Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## MEMORANDUM OF LAW

### STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint set forth "a short and plain statement of the claim" showing that the pleader is entitled to relief in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a pleader is not obligated to allege "a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that the complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Financial Security Assurance, Inc. v. Stephens, Inc., 450 F.3d 1257, 1262 (11th Cir. 2006) (*quoting* Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Stated differently, the "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678.

Therefore, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" American Dental Association v. Cigna Corp., 605 F.3d 1283, 1289 (11th Cir. 2010) (*quoting* Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting* Twombly, 550 U.S. at 557). The former rule – that "[a] complaint should be dismissed only if it appears beyond a doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) – was retired by Twombly. *See, e.g.,* James River Ins. Co. v. Ground Down Engineering Inc., 540 F.3d 1270, 1274 (11th Cir. 2008).

When reviewing a motion to dismiss, a court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. *See, e.g.,* Trent v. Mortgage Electronic Registration Systems, Inc., 288 Fed. Appx. 571, 572 (11th Cir. 2008); Thomas v. Peterson's Harley Davidson of Miami, L.L.C., 363 F.Supp.3d 1368, 1371 (S.D. Fla. 2018). However, "the tenet that the court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678. To the contrary, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Thomas, 363 F.Supp.3d at 1371 (*quoting* Twombly, 550 U.S. at 555). Accordingly, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not

4

prevent dismissal." Davila v. Delta Airlines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003). *See also* Gulbalis v. U.S. Citizenship and Immigration Services Kendall Field Office, 642 Fed.Appx. 953, 955 (11th Cir. 2016).

Consistent with the foregoing, courts follow a "two-pronged approach" in considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Association, 605 F.3d at 1290 (*quoting* Ashcroft, 556 U.S. at 679). "Determining whether a complaint states a plausible cause of action [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. In so doing, the court "may infer from the factual allegations in the complaint 'obvious alternative allegations,' which suggest lawful conduct, rather than the unlawful conduct that the plaintiff would ask the court to infer." American Dental Association, 605 F.3d at 1290 (*quoting* Ashcroft, 556 U.S. at 682). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'shown' – 'that the pleader is entitled to relief.'" Ashcroft, 556 U.S. at 679 (*quoting* Fed.R.Civ.Pro. 8(a)(2)).

**PLAINTIFF HAS FAILED TO PLEAD ANY FACTS TENDING TO CREATE AN INFERENCE THAT ACE SENT TEXT MESSAGES USING AN AUTOMATIC TELEPHONE DIALING SYSTEM**

"To sustain a claim under the TCPA, Plaintiff must plausibly allege that Defendant used an 'automatic telephone dialing system or an artificial or prerecorded voice.'" McGinity v. Tracfone Wireless, Inc., 5 F.Supp.3d 1337, 1340 (M.D. Fla. 2014) (*quoting* 47 U.S.C. § 227(b)(1)(A)). *See also* Adams v. Ocwen Loan Servicing, LLC, 366 F.Supp.3d 1350, 1353-

1354 (S.D. Fla. 2018) ("[T]o state a claim for violation of the TCPA, a plaintiff must provide sufficient support of the following elements: '(1) a call was made to a cell or wireless phone, (2) by use of an automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party'") (*quoting* Witchard v. Allied Interstate, LLC, 2015 WL 6817163, *2 (M.D. Fla. 2015)). Here, the Amended Complaint does not allege that ACE made any calls using an artificial or prerecorded voice. Conversely, the Amended Complaint does allege that ACE has "an automatic telephone dialing system," which ACE purportedly used "to send text messages to the cellular phone[] of Plaintiff." *See* Amended Complaint, ¶¶ 11 and 34.

However, "a 'bare allegation that a defendant used an automatic dialing system is not enough.'" McGinity, 5 F.Supp.3d at 1340 (*quoting* Jones v. FMA Alliance Ltd., 978 F.Supp.2d 84, 86 (D. Mass. 2013)) (internal citation omitted). *See also* Baranski v. NCO Financial Systems, Inc., 2014 WL 1155304, *6 (E.D. N.Y. 2014) ("Such an allegation is 'a bare legal conclusion entitled to no weight'"). "To satisfy this element, courts permit the allegation of an automatic system to be pled on information and belief, but require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device." Norman v. Sito Mobile Corp., 2017 WL 1330199, *3 (D. N.J. 2017). *See also* Mesa v. American Express Educational Assurance Co., 2017 WL 2212147, *5 (S.D. Fla. 2017) ("'[W]ell-pled allegations of an automated telephone dialing system rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an automated telephone dialing system was used'") (*quoting* Gragg v. Orange Cab Co., 942 F.Supp. 2d 111, 114 (W.D. Wash. 2013)); Baranski, 2014 WL 1155304 at *6 ("Plaintiffs need not plead 'specific

technical details' regarding [Defendant's] use of an ATDS, but they must at least describe, in layman's terms, the facts about the calls or the circumstances surrounding the calls to make it plausible that they were made using an ATDS"); Johansen v. Vivant, Inc., 2012 WL 6590551, *3 (N.D. Ill. 2012) ("It is not unreasonable . . . to require a plaintiff to describe the phone messages he received in layman's terms or provide the circumstances surrounding them to establish his belief that the messages were prerecorded or delivered via an ATDS"). Absent such basic factual information, a complaint fails to state a facially plausible TCPA claim and should be dismissed. *See, e.g.,* McGinity, 5 F.Supp.3d at 1340 ("Use of an automatic telephone dialing system is a necessary element of a claim under the TCPA, so dismissal is required in the absence of a plausible inference that Defendant used such a device"); Mesa, 2017 WL 2212147 at *5; Norman, 2017 WL 1330199 at *3; Baranski, 2014 WL 1155304 at *6; Johansen, 2012 WL 6590551 at *3; Hunter v. Diversified Consultants, Inc., 2014 WL 6747153, *1 (M.D. Fla. 2014).

In the instant action, Plaintiff has not plead ***any*** facts about the purported text messages or the circumstances surrounding the text messages that makes it plausible they were transmitted by an automatic telephone dialing system. While the Amended Complaint does vaguely assert that ACE sent text messages to Plaintiff via such a system, Plaintiff does ***not*** plead his factual basis for that allegation. For example, Plaintiff does not point to anything in the text messages themselves which is allegedly a characteristic of an automated telephone dialing system, does not describe the circumstances surrounding the text messages, and does not allege the absence of a prior relationship between the parties (i.e., that Plaintiff has never had a vehicle serviced by ACE). Simply put, there is absolutely nothing in the Amended Complaint that creates any inference supporting the bald assertion that ACE sent text messages

to Plaintiff using an automatic dialing system. Accordingly, the Amended Complaint should be dismissed. *See, e.g.,* McGinity, 5 F.Supp.3d at 1340; Mesa, 2017 WL 2212147 at *5; Hunter, 2014 WL 6747153 at *1; Norman, 2017 WL 1330199 at *3; Baranski, 2014 WL 1155304 at *6; Johansen, 2012 WL 6590551 at *3.

Ironically, the Amended Complaint actually ***undermines*** Plaintiff's assertion that ACE used an automatic telephone dialing system to transmit text messages to Plaintiff. While the Amended Complaint is otherwise devoid of relevant factual information, it does contain a screenshot allegedly depicting the "actual text messages received by Plaintiff from ACE."[1] *See* Amended Complaint, ¶ 14. The screenshot indicates that Plaintiff's cellular phone was ***not*** selected at random (which is a hallmark of an automatic telephone dialing system), but rather specifically targeted because Plaintiff had a vehicle serviced by ACE. The screenshot identifies Plaintiff by name ("Blake"), thanks Plaintiff for bring a customer ("Thank you for allowing our team to help you"), and asks Plaintiff to confirm that his service visit was satisfactory ("Please click the link below to leave your feedback!"). This is the antithesis of a text message sent en masse to randomly or sequentially generated numbers. *See, e.g.,* Duguid v. Facebook, Inc., 2016 WL 1169365, *5-*6 (N.D. Cal. 2016) (dismissing TCPA claim because plaintiff's own allegations "suggest that Facebook's login notification text messages are targeted to specific phone numbers and triggered by attempts to log in to Facebook accounts"; such allegations "do not support the inference that the text messages . . . were sent using an ATDS"); Weisberg v. Stripe, Inc., 2016 WL 3971296, *3-*4 (N.D. Cal. 2016) (dismissing

---

[1] Although Plaintiff alleges that he received multiple text messages from ACE, the screenshot that he incorporates into the Amended Complaint only depicts a single text message. Moreover, Plaintiff does not plead any facts (date, time, content, etc.) which support his conclusory assertion that ACE sent him multiple texts.

TCPA claim because "the allegations suggest that Stripe's text messages were sent to an individual user of its checkout service and in response to a direct communication from Plaintiff"; therefore, "Plaintiff has not plausibly alleged that the text messages were sent randomly to him by an ATDS").

Moreover, since the screenshot suggests that the text message was not generated by an automatic telephone dialing system, the Court may infer from the screenshot that the text message was lawfully sent. *See, e.g.,* American Dental Association, 605 F.3d at 1290 (the court "may infer from the factual allegations in the complaint 'obvious alternative allegations,' which suggest lawful conduct, rather than the unlawful conduct that the plaintiff would ask the court to infer") (*quoting* Ashcroft, 556 U.S. at 682). Since the alternative, lawful inference created by the screenshot is at least equally compelling as Plaintiff's conclusory allegation that ACE violated the TCPA, Plaintiff has "not nudged [his] claim across the line from conceivable to plausible." American Dental Association, 605 F.3d at 1290 (*quoting* Twombly and observing that Ashcroft dismissed a complaint because "[t]he alternative inferences that could be drawn from the facts – namely, that the arrests were likely lawful and justified by nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts – were at least equally compelling").

**PLAINTIFF HAS FAILED TO PLEAD ANY FACTS TENDING TO CREATE AN INFERENCE THAT ACE SENT TEXT MESSAGES WITHOUT PLAINTIFF'S PRIOR EXPRESS CONSENT**

In order to state a viable TCPA claim, Plaintiff must also plead facts from which it can be plausibly inferred that ACE sent Plaintiff a text message without his prior express consent. *See* Adams, 366 F.Supp.3d at 1353-1354 ("[T]o state a claim for violation of the TCPA, a

9

plaintiff must provide sufficient support of the following elements: '(1) a call was made to a cell or wireless phone, (2) by use of an automatic dialing system <u>or</u> an artificial or prerecorded voice, and (3) without prior express consent of the called party'") (*quoting* <u>Witchard</u>, 2015 WL 6817163 at *2). *See also* <u>Martin v. Alied Interstate, LLC</u>, 192 F.Supp.3d 1296, 1308 (S.D. Fla. 2016); <u>Williams v. New Penn Financial, LLC</u>, 2017 WL 11221333, *4 (M.D. Fla. 2017). While the TCPA does not define "prior express consent", the FCC has promulgated regulations governing the level of consent a caller must obtain prior to calling a cellular phone using an automatic telephone dialing system. All calls other than those containing advertisements or constituting telemarketing require only "the prior express consent of the called party." 47 C.F.R. § 64.1200(a)(1). *See also* <u>Edelsberg v. Vroom, Inc.</u>, 2018 WL 1509135, *4 (S.D. Fla. 2018) ("If Vroom's text message did not constitute telemarketing, then Vroom only needed Edelsberg's prior express consent before contacting him"); <u>Reese v. Marketron Broadcast Solutions, Inc.</u>, 2018 WL 2117241, *4 (E.D. La. 2018 ) ("the sufficiency of plaintiff's TCPA claim based on the . . . text message turns on whether that message constitutes advertising or telemarketing . . . and, if not, whether she provided prior express consent"). In contrast, a caller that wishes to use an automatic telephone dialing system that includes an advertisement or constitutes telemarketing must obtain "prior express *written* consent." 47 C.F.R. § 64.1200(a)(2) (emphasis added). *See also* <u>Edelsberg</u>, 2018 WL 1509135 at *4 ("If the call constitutes or includes telemarketing, a caller using an ATDS must obtain the called party's 'prior express written consent' before contact").

Here, Plaintiff repeatedly alleges in a conclusory fashion that ACE sent text messages with a "marketing" angle to Plaintiff as part of a larger "marketing campaign." *See* Amended Complaint, ¶¶ 12, 14, 34, 36. However, Plaintiff must do more than simply characterize the

10

alleged text messages as "telemarketing" or "advertising." *See, e.g.,* Rotberg v. Jos. A. Bank Clothiers, Inc., 345 F.Supp.3d 466, 479 (S.D. N.Y. 2018) ("Rotberg's tautological description of the 'initial marketing text message' as a text that contained marketing material is nothing more than a 'formulaic recitation of one of the elements of his cause of action,' which the Supreme Court instructs is insufficient to survive a Rule 12(b)(6) motion . . . Rotberg's conclusory allegation that the initial text message constituted telemarketing – a legally defined term and a required element of his TCPA claim – is precisely the kind of legal conclusion that courts must disregard"). Instead, Plaintiff must plead facts which suggest the alleged text messages advertised "the commercial availability or quality of . . . property, goods, or services." 47 C.F.R. § 64.1200(f)(1) (defining "advertisement"). Alternatively, Plaintiff must plead facts which suggest the alleged text messages encouraged "the purchase or rental of, or investment in, property, good, or services . . . ." 47 C.F.R. § 64.1200(f)(12) (defining "telemarketing").

Plaintiff has not done either. Nowhere in the Amended Complaint does Plaintiff describe a text message that he allegedly received from ACE which advertised the availability of property, goods, or services. And nowhere in the Amended Complaint does Plaintiff describe a text message that he allegedly received from ACE which encouraged the purchase or rental of property, goods, or services. Instead, Plaintiff merely incorporates into the Amended Complaint a screen shot that purportedly illustrates the violative text messages. *See* Amended Complaint, ¶ 14. However, the single text message depicted in the screen shot does ***not*** mention the availability, or encourage the purchase or rental, of any property, goods, or services. Rather, the text message just asks a prior customer to provide feedback regarding recent service to his vehicle. This type of communication is ***not*** advertising or telemarketing as

11

defined by the TCPA. *See, e.g.,* Mauthe v. National Imaging Associates, Inc., 767 Fed.Appx. 246, 250 (3rd Cir 2019) (holding faxed survey wherein defendant sought feedback from its customers regarding the quality of its healthcare services did not constitute an advertisement under the TCPA); Broking v. Green Brook Buick GMC Suzuki, 2017 WL 3610490, *5 (D. N.J. 2017) (holding robocall wherein defendant sought to "confirm Plaintiff's satisfaction with his service visit" did not constitute telemarketing under the TCPA); Smith v. Blue Shield of California Life & Health Insurance Co., 228 F.Supp.3d 1056, 1066-1068 (C.D. Cal. 2017) (holding robocall wherein defendant provided information to its customers regarding renewal of health insurance did not constitute telemarketing under the TCPA, and rejecting plaintiff's contention that defendant's "overarching incentive to retain customers . . . creates a clear implication of encouraging purchase of a good, product or service"; "[w]ere this Court to hold otherwise, it would transform practically *all* communications from any entity that is financially motivated and exchanges goods or services for money into telemarketing or advertising, which would contravene the delineated definitions of telemarketing and advertising in 47 C.F.R. § 64.12000(f)(1), (12)") (emphasis in original).

Since the Amended Complaint does not contain facts sufficient to support Plaintiff's assertion that he received a text message from ACE which contained marketing material, the lower standard of "prior express consent" applies. *See, e.g.,* Moser v. Health Insurance Innovation, Inc., 2019 WL 2271804, *15 (S.D. Cal. 2019) ("If telephone calls made using an automatic telephone dialing system or an artificial or prerecorded voice do not constitute 'advertisement' or 'telemarketing', a lower standard of 'prior express consent' applies"). This is noteworthy because the prior express consent standard is satisfied whenever a plaintiff provides his telephone number to a defendant. *See, e.g.,* Edelsberg, 2018 WL 1509135 at *7

("The Eleventh Circuit has . . . ruled that express consent is established where a plaintiff provides his phone number to the defendant and the defendant contacts the plaintiff at the number provided"); Rotberg, 345 F.Supp.3d at 477 ("The FCC has explained that this lower threshold of consent can be satisfied by the simple act of giving one's phone number directly to a caller"); Lawrence v. Bayview Loan Servicing, LLC, 666 Fed.Appx. 875, 880 (11th Cir. 2016) ("it is equally clear that the provision of a mobile phone number, without limiting instructions, suffices to establish the consumer's general consent to be called under the TCPA"); Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1308 (11th Cir. 2015) ("Mr. Murphy gave his prior express consent to receive auto dialed calls or text messages, such as the two text messages he received, by providing his cell phone number . . .").

That said, the Amended Complaint suggests that Plaintiff provided his cellular telephone number to ACE. The text message depicted in the Amended Complaint identifies Plaintiff by name ("Blake"), thanks Plaintiff for bring a customer ("Thank you for allowing our team to help you"), and asks Plaintiff to confirm that his service visit was satisfactory ("Please click the link below to leave your feedback!"). Logically, such a text message would only be sent to an individual that had patronized ACE and, in connection therewith, provided ACE with his name and cellular telephone number. Moreover, Plaintiff has not pled any facts from which an alternative scenario can be inferred. Since the Amended Complaint indicates that Plaintiff gave prior express consent to be sent text messages by ACE, the Amended Complaint should be dismissed. *See, e.g.,* Pinkard v. Wal-Mart Stores, Inc., 2012 WL 5511039, *6 (N.D. Ala. 2012) (dismissing TCPA claim because complaint indicated that plaintiff had provided her telephone number to defendant, thereby giving prior express consent to be sent text messages); Emanuel v. Los Angeles Lakers, Inc., 2013 WL 1719035, *3-*4 (C.D. Cal.

2013) (dismissing TCPA claim because complaint indicated that plaintiff had provided his telephone number to defendant, thereby giving prior express consent to be sent text messages); Huyge v. Gold's Gym Franchising, LLC, 2014 WL 11515701, *2-*4 (D. Ariz. 2014) (dismissing TCPA claim because complaint indicated that plaintiff had provided his telephone number to defendant, thereby giving prior express consent to receive automated telephone calls); Pietzak v. Microsoft Corp., 2015 WL 7888408, *1-*2 (C.D. Cal. 2015) (dismissing TCPA claim because complaint indicated that plaintiff had provided his telephone number to defendant, thereby giving prior express consent to be sent text messages).

WHEREFORE, Defendant, ATLANTIC COAST ENTERPRISES, LLC d/b/a ACE LUBE CENTERS, LLC, respectfully requests that the Court enter an Order dismissing the Amended Complaint filed herein by Plaintiff, BLAKE TURIZO, individually and on behalf of all others similarly situated, and provide such other and further relief as the Court deems just, equitable and proper.

    Respectfully submitted,

    **MOSKOWITZ, MANDELL, SALIM & SIMOWITZ P.A.**
    Counsel for Defendant, Atlantic Coast Enterprises, LLC d/b/a ACE Lube Centers, LLC
    800 Corporate Drive, Suite 500
    Fort Lauderdale, Florida 33334
    Telephone: (954) 491-2000
    Facsimile: (954) 491-2051
    E-Mail: tarmbruster@mmsslaw.com
            mvassallo@mmsslaw.com

    By: /s/ Todd A. Armbruster
        TODD A. ARMBRUSTER
        Florida Bar No. 188085

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 31, 2019, I electronically filed the foregoing Motion to Dismiss Amended Complaint and Supporting Memorandum of Law with the Clerk of the Court using CM/ECF. I also certify that the Motion to Dismiss Amended Complaint and Supporting Memorandum of Law is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

**MOSKOWITZ, MANDELL, SALIM & SIMOWITZ P.A.**
Counsel for Defendant, Atlantic Coast Enterprises, LLC d/b/a ACE Lube Centers, LLC
800 Corporate Drive, Suite 500
Fort Lauderdale, Florida 33334
Telephone: (954) 491-2000
Facsimile: (954) 491-2051
E-Mail: tarmbruster@mmsslaw.com
mvassallo@mmsslaw.com

By: /s/ Todd A. Armbruster
TODD A. ARMBRUSTER
Florida Bar No. 188085

## SERVICE LIST

CASE NO.: 0:19-CV-61140-BB

| | |
|---|---|
| Jibrael S. Hindi, Esq.<br>Thomas J. Patti, Esq.<br>The Law Offices of Jibrael S. Hindi, PLLC<br>Counsel for Plaintiff, Blake Turizo<br>110 SE 6th Street, 17th Floor<br>Fort Lauderdale, FL 33301<br>E-Service:     jibrael@jibraellaw.com<br>                        tom@jibraellaw.com<br>Service by Notice of Electronic Filing generated by CM/ECF | Edward M. Mullins, Esq.<br>Brandon T. White, Esq.<br>Daniel A. Sox, Esq.<br>Reed Smith, LLP<br>Counsel for Defendant, Jiffy Lube International, Inc.<br>1001 Brickell Bay Drive, Suite 900<br>Miami, FL 33131<br>E-Service:     emullins@reedsmith.com<br>                        bwhite@reedsmith.com<br>                        dsox@reedsmith.com<br>Service by Notice of Electronic Filing generated by CM/ECF |